**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JENNIFER D.,

                        Plaintiff,

        v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

                        Defendant.

_____

No. 8:17-CV-0497
(CFH)

**APPEARANCES:**

Schneider & Palcsik
57 Court Street
Plattsburgh, New York 12901
Attorney for plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**OF COUNSEL:**

MARK A. SCHNEIDER, ESQ.

PADMA GHATAGE, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Jennifer D. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI").

Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 19, 23. For the following reasons, the determination of the Commissioner is affirmed.

## I. Relevant Background

### A. Factual Background

Plaintiff was born in 1986. T. 61.[2] Plaintiff completed tenth grade. Id. at 983. In 2006, she was employed as a fast food worker for a period of eight or nine months. Id. at 984. She did not work at any time between the January 19, 2012 hearing and the March 28, 2017 hearing. Id.

### B. Procedural History

On October 19, 2010, plaintiff filed a Title II application for a period of disability and disability insurance benefits. T. 123-28. Plaintiff also filed a Title XVI application for supplemental security income on September 29, 2010. See id. at 60. Plaintiff alleged disability in both applications beginning on March 30, 2008. See id. at 60, 123-28. These claims were initially denied on November 30, 2010. Id. at 62-69. Plaintiff requested a hearing, and a hearing was held on January 19, 2012 before Administrative Law Judge ("ALJ") Carl E. Stephan. Id. at 5, 26-45. ALJ Stephan determined that plaintiff "ha[d] not

---

[1]   Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 16.

[2]   "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 15. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

been under a disability as defined in the Social Security Act from March 30, 2008, through the date of this decision." Id. at 19.  The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-4.

Plaintiff appealed the Appeals Council's denial to this Court, and on June 5, 2014, the undersigned issued a Report-Recommendation and Order recommending that the Commissioner's decision be vacated and the matter be remanded to the agency for further consideration consistent with the opinion.  T. 1054-78.  On June 23, 2014, the Hon. Glenn T. Suddaby, United States District Court Judge, accepted and adopted the undersigned's recommendation.  Id. at 1050-53.  ALJ Stephan conducted the remand hearing, and on April 27, 2017, he denied plaintiff's appeal.  Id. at 943-72.  Plaintiff commenced this action on May 8, 2017.  See Compl.

### C. ALJ's Decision

Applying the five-step sequential evaluation, the ALJ determined that plaintiff has not engaged in substantial gainful activity since March 30, 2008, the alleged onset date. T. 946.  The ALJ found at step two that plaintiff had the severe impairments of asthma, carpal tunnel syndrome, chronic pain syndrome, degenerative disc disease in the cervical spine, de Quervain's tenosinovitis in the right wrist and hand, femoral acetabular impingement syndrome, fibromyalgia, migraine headaches, myofascial pain syndrome, Raynaud's syndrome, anxiety disorder, bipolar disorder, learning disorder, major depressive disorder, and personality disorder.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically

3

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  Id.  Before reaching step four, the ALJ concluded that plaintiff retained the

residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except: [plaintiff] can stand and walk for thirty
> minutes each at a time before needing to change positions for
> five minutes; [plaintiff] can sit for one hour before she needs to
> change positions for five minutes; [plaintiff] can occasionally
> climb stairs and ramps, but can never climb ladder or
> scaffolds; [plaintiff] can occasionally balance, stoop, kneel,
> crouch, or crawl; [plaintiff] can occasionally use her right upper
> extremity for pushing, pulling, and overhead reaching; [plaintiff]
> must avoid concentrated exposure to respiratory irritants,
> temperature extremes, or humidity; [plaintiff] can understand,
> remember, and carry out simple instructions; [plaintiff] can
> perform simple tasks; [plaintiff] can make judgments on simple
> work-related decisions; [plaintiff] can frequently interact with
> supervisors and coworkers, but can only occasionally interact
> with the public; and [plaintiff] can occasionally adapt to
> changes in the work setting.

Id. at 949.  At step four, the ALJ determined that plaintiff had no past relevant work.  Id. at

970.  At step five, relying on the testimony of a vocational expert, the ALJ concluded there

are jobs that exist in significant numbers in the national economy that plaintiff can perform.

Id. at 971.  Thus, the ALJ determinated that plaintiff "has not been under a disability, as

defined in the Social Security Act, from March 30, 2008, through the date of this decision."

Id. at 972.


### D. The Parties' Arguments

Plaintiff first argues that the ALJ did not comply with the Remand Order of this

Court.  Dkt. No. 19 at 23-24.  Plaintiff next argues that the ALJ erred by giving more weight

4

to the consultative reports rather than to the findings and opinions of treating sources.  Id. at 26-34.  Plaintiff then argues that plaintiff is disabled by her "combination of fibromyalgia, her spinal disorder, femoral acetabular impingement syndrome, migraine headaches, DeQuervain's syndrome, pain, bipolar disorder, anxiety, depression, and limited reading ability."  Id. at 34-42.  Plaintiff next argues that the ALJ erred by not having "clearing and convincing evidence to not credit [p]laintiff's testimony regarding her limitations."  Id. at 42-46.  Plaintiff then argues that plaintiff does not have the RFC to be a tube operator, document preparer, or surveillance system monitor.  Id. at 46.  Finally, plaintiff argues that this Court should order that a different ALJ be assigned on remand.  Id. at 46-47. Conversely, the Commissioner argues that substantial evidence supports the Commissioner's final decision.  See generally Dkt. No. 23.

## II. Relevant Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise.*" Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).   However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her

previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subject complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037) (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past

7

> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80

(2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the

burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  See id. at 1180 (citing Berry, 675 F.2d at 467).

### III. Analysis

### A. Compliance with the Court's Remand Order

Plaintiff argues that, on remand, the ALJ "obligatorily granted significant weight to

[the] diagnos[es] of Dr. Bonnabasse and Ms. Hinton," but "did not find their opinions . . .

helpful in determining her RFC[ ] because they refused to send medical source

statements."  Dkt. No. 19 at 25.  Plaintiff contends that if the ALJ had "really given

significant weight" to these opinions, "he would have been compelled to find that she was

disabled because of her well-documented pain."  Id. at 26.  The Commissioner argues that

because "diagnoses alone are not sufficient to determine functional limitations," the ALJ

appropriately assessed Dr. Bonnabesse's treatment history and assigned his diagnosis

"significant weight."  Dkt. No. 23 at 6-7.

In assessing the ALJ's initial RFC determination, this Court recommended remand,

stating:

> [T]he ALJ failed to comply with the relevant regulations
> pertaining to the analysis of some of the medical opinion
> evidence.  Those errors compel the Court to remand this

matter and further require the ALJ to reassess the RFC. Plaintiff asserts additional allegations related to the ALJ's RFC assessment and contends that it is flawed due to the ALJ's failure to properly consider plaintiff's fibromyalgia, spinal/epigastric complaints, bipolar disorder, the side effects from her medication and plaintiff's limitations in reading and writing. Because the ALJ erred in evaluating the opinions from plaintiff's treating physician, Dr. Bonnabesse and P.A. Hinson and erred when he assigned significant weight to the opinions expressed by Dr. Blackwell, the Court cannot decide whether the ALJ's finding at step four of the sequential evaluation was supported by substantial evidence. Remand is appropriate in instances, such as this, when the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision."

T. 1075 (citation omitted). With regard to P.A. Hinson, the undersigned stated that "[o]n remand, the ALJ must address P.A. Hinson's treatment and provide an explanation of what weight, if any, he assigns to that opinion." Id. at 1062. With regard to Dr. Bonnabesse, the undersigned noted that the ALJ had "committed reversible error when he failed to mention, consider or discuss plaintiff's treatment with Dr. Bonnabesse," and instructed the ALJ to "follow the regulations and develop the record accordingly." Id. at 1064.

The Court agrees with the Commissioner, and finds that the ALJ complied with the remand order in making his determination. The ALJ examined at length the treatment history of P.A. Hinson and Dr. Bonnabesse, and expressly addressed the remand order in granting "significant weight to any opinions regarding claimant's diagnoses that Dr. Bonnabesse and Ms. Hinson stated in their treatment notes because their opinion on [plaintiff's] various diagnoses appear to be well supported by the clinical findings in their treatment notes." T. 970. However, as both parties point out, Dr. Bonnabesse declined to provide a medical source statement as plaintiff "had no upcoming appointments with his

9

practice and had not been seen since 2014." Id. at 943 n.1. Insofar as plaintiff contends that the ALJ did not give "significant weight" to Dr. Bonnabesse's findings and opinions, the Court will further discuss this below.

Accordingly, the Court finds that the ALJ properly responded to the remand order requesting that he detail P.A. Hinson and Dr. Bonnabesse's treatment history, and provide an explanation for the weight accorded to those opinions.

## B. Weighing Medical Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).[3]  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Id. (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to

_____

[3] Although the SSA has recently advised that it has eliminated the Treating Physician's Rule, such elimination applies only to matters decided from March 2017 forward.

the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013)) (summary order). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Id. (quoting Burgess, 537 F.3d at 129-30).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p (SSA), 1996 WL 374184, at *7 (July 2, 1996). This Court has ordered remand in cases where the ALJ failed to appropriately explain the weight afforded to opinion evidence. See Jordan v. Comm'r of Soc. Sec., No. 8:15-CV-0436, 2016 WL 3661429, at *5 (N.D.N.Y. July 5, 2016) (finding remand necessary where the ALJ failed to weigh the opinions from two treating physicians); Campbell, 713 F. Supp. 2d at 140 (remanding where the ALJ "did not explain why his findings were contrary, discuss [the State Agency physician's] opinions, or give weight to her opinions"); Duell v. Astrue, No. 8:08-CV-0969, 2010 WL 87298, at *5 (N.D.N.Y., Jan. 5, 2010) (remanding in part due to the ALJ's failure to explain the weight he afforded to the opinions of various consultative physicians and psychologists). However, failure to consider or weigh an opinion may be harmless error

where consideration of that opinion would not have changed the outcome.  Cottrell v. Colvin, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); Camarata v. Colvin, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying a request for remand because application of the correct legal standard would not have changed the outcome); Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).

### 1. P.A. Hinson and Dr. Bonnabesse

First, plaintiff argues that the ALJ erred by not expressly "apply[ing] and explain[ing] the requisite factors listed in the treating source rule . . . in failing to give the proper weight to the findings and opinions of RPA Hinson."  Dkt. No. 19 at 30-31.  The Court disagrees. It is well-settled that an ALJ is not required to explicitly list and discuss each factor or explain the weight given, and courts generally will not remand where "the 'substance of the treating physician rule was not traversed."  Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) (quoting Halloran, 362 F.3d at 32); Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (summary order).  The ALJ provided an in depth discussion of plaintiff's treating relationship with P.A. Hinson from June 2009 through September 2011, and briefly in April 2012.  See T. 953-58.

The ALJ set forth that P.A. Hinson's diagnoses of plaintiff "appear to be well supported by the clinical findings in [her] treatment notes." Id. at 970. Thus, it was within the ALJ's discretion to find her opinion "particularly instructive in formulating the residual functional capacity . . . because diagnoses alon[e] are generally not sufficient to determine what functional limitations an individual is subject to in light of their impairments." Id.; Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 562 (S.D.N.Y. 2018) ("A mere diagnosis, however, does not necessarily support a finding of limitations in a claimant's RFC.") (citing inter alia Durgan v. Astrue, No. 12-CV-279 (DNH/CFH), 2013 WL 1122568, at *3 (N.D.N.Y. Feb. 19, 2013) ("[A] diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities.").

A similar analysis applies to plaintiff's contentions against Dr. Bonnabesse. Plaintiff met with Dr. Bonnabesse on March 24, 2011 for an "initial pain management consultation regarding neck and mid back pain." T. 869. Plaintiff reported that her pain was constant — at best her pain level was 4/10, worst 9/10, and on average 5/10. Id. She stated that pain "radiate[d] to her mid thigh area" and that her "worst pain is on both sides of her neck and on top of the shoulders." Id. Her pain increased when she sat or stood for too long, or picked up her daughter. Id. Dr. Bonnabesse noted that plaintiff did not appear to be in acute distress, and was alert and oriented. Id. Her gait was normal, speech fluent, and mood euthymic. Id. She was pleasant, courteous, and cooperative throughout the exam. Id. Plaintiff's vital signs were "[g]rossly stable." Id. Dr. Bonnabesse diagnosed plaintiff with thoracic and cervical myofascial pain syndrome. Id. at 870. He performed trigger

point injections in her "paravertebral muscles" and "trapezius muscles" to treat "trigger points" and muscle tightness. Id. The injections relieved some of plaintiff's pain. Id. Dr. Bonnabesse further recommended an MRI of plaintiff's thoracic spine "to make sure that there is not a disc herniation or some other abnormality that could explain her current symptoms." Id.

On May 2, 2011, plaintiff present to Dr. Bonnabesse for a follow-up visit. T. 871. He noted that the MRI results showed a normal thoracic spine, but the cervical images showed "a slight bulging disc at C 5-6, which correlates with an area of pain to palpation in [plaintiff's] neck." Id. Plaintiff reported "some improvement in her upper back and shoulder pain," but still experienced "quite a bit of pain." Id. She stated that her lower back was "not doing to[o] bad," but that she had some pain in her hips and across the base of her lower back. Id. Dr. Bonnabesse noted that he was awaiting blood work to determine whether plaintiff's pain was caused by systemic arthritis rather than fibromyalgia. Id. Dr. Bonnabesse indicated that plaintiff did not appear to be in acute distress, and that she was "alert and oriented x3." Id. Her gait was normal, and her vital signs were "[g]rossly stable." Id. Her speech was fluent, and her mood euthymic. Id. Dr. Bonnabesse diagnosed plaintiff with thoraric and cervical myofascial pain syndrome, cervical radiculopathy, and fibromyalgia. Id. He recommended that plaintiff receive a "cervical interlaminar steroid injection at 6-7" and meet with a chiropractor. Id. at 872. He again noted that it would be difficult to determine if plaintiff had fibromyalgia "as it is largely a diagnosis of exclusion." Id.

On December 1, 2011, plaintiff met with Dr. Bonnabesse for a follow-up

14

appointment.  T. 875.  Plaintiff presented with complaints of pain between her shoulder blades and across her trapezius muscles.  Id.  She noted "increasing episodes of sciatic pain down into her legs[.]"  Id.  Dr. Bonnabesse indicated that plaintiff was in no acute distress, and that she was "alert and oriented x3."  Id.  She was pleasant, courteous, and cooperative.  Id.  Her speech was fluent, her mood euthymic, and her gait normal.  Id.  Dr. Bonnabesse added diagnoses of sacroiliitis, piriformis syndrome, lumbar myofascial pain syndrome, and cervical facet arthropathy.  Id.

As with P.A. Hinson, the ALJ granted "significant weight to any opinions regarding [plaintiff's] diagnoses that Dr. Bonnabesse . . . stated in [his] treatment notes because [his] opinion on [plaintiff's] various diagnoses appear to be well supported by the clinical findings in [his] treatment notes."  T. 970.  Such statement is consistent with the ALJ's determination that plaintiff suffered from the severe impairments of chronic pain syndrome, fibromyalgia, and myofascial pain.  Id. at 946.  Thus, the Court finds that the ALJ appropriately addressed the factors set forth in 20 C.F.R. §§ 404.1527(c) in assessing P.A. Hinson and Dr. Bonnabasse's medical opinions.

### 2. Dr. Liotta

Plaintiff argues that the "ALJ erred by not giving sufficient weight to the well-supported conclusions of examining consultant Dr. Liotta."  Dkt. No. 19 at 33.  On January 13, 2017, Dr. Liotta conducted a psychological evaluation of plaintiff.  See T. 1614-20.  Dr. Liotta reviewed background information regarding plaintiff's psychological complaints, as well as plaintiff's subjective complaints regarding her symptoms.  See id.  She stated that

plaintiff's mood was depressed and anxious, and her affect was constricted. Id. at 1618. She reported numerous symptoms of depression, and that she had trouble sleeping due to overthinking. Id. Dr. Liotta opined that plaintiff had marked anticipatory anxiety, and that her "abstracting ability was at best low average." Id. Her general fund of information was poor. Id. She was able to do serial 3s, and recalled 5/5 words immediately and recall 4/5 words after a delay. Id. at 1618-19. Dr. Liotta indicated that plaintiff's anxiety and depression would "likely [ ] compromise her ability to attend and concentrate at times," but assessed that her insight was "fair to good," and her judgment was "fair." Id. at 1619.

As to the functional assessment and conclusions, Dr. Liotta noted that although plaintiff could cook, clean, and care for her daughter, she had marked difficulty functioning outside of her usual environment. T. 1619. Dr. Liotta opined that plaintiff had a significant impairment in social functioning, and that she would likely have substantial difficulty dealing with the public, coworkers, or authority figures. Id. He opined that plaintiff's ability to attend and concentrate was impaired, and although her abilities were "likely fundamentally intact[,] her anxious ideation, depression, and internal thoughts [were] distracting for her." Id. Dr. Liotta diagnosed plaintiff with Persistent Depressive Disorder with dysthymia and major depressive episodes; Panic Disorder, improved; Generalized Anxiety Disorder, severe; and Unspecified Personality Disorder. Id. Dr. Liotta stated that "[t]he likelihood that [plaintiff] could sustain gainful employment in any capacity is low." Id. at 1620.

The ALJ granted "little weight" to Dr. Liotta's medical opinion. T. 969. As the Commissioner sets forth, Dr. Liotta's assessment that plaintiff had a significant impairment in social function, marked difficulty functioning outside her usual environment, impaired

ability to attend and concentrate, and impaired ability to deal with stressful situations, is inconsistent with other evidence in the record.  See Dkt. No. 23 at 12.  The ALJ notes that in her function report, plaintiff contends that she was able to go outside every day and to go out by herself.  T. 200, 969.  Plaintiff also previously reported that she had no problems getting along with bosses, teachers, police, landlords, or other people in authority, and that she had never lost a job because of problems getting along with people.  Id. at 203-04.  In 2017, she discussed a new romantic relationship with a friend that she had known for about four months, and that she visited him for the weekend.  Id. at 1603.  Plaintiff also reported to Nurse Practitioner ("N.P.") Heywood that she walked for exercise five to seven times per week.  Id. at 1406.  N.P. Heywood's treatment notes show that on July 1, 2016; September 2, 2016; October 5, 2016; and February 15, 2017 that plaintiff's attention span and concentration were normal.  Id. at 969, 1405-09, 1415-21, 1568-75.

Moreover, the ALJ notes that "Dr. Liotta's conclusions regarding [plaintiff's] ability to concentrate and focus appear to be based entirely on her subjective reports and does not appear to take into account testing that he performed."  T. 969.  The Court finds that the ALJ's determination is not in error.  Dr. Liotta's opinion indicates that although plaintiff's "abstracting ability was at best low average," she was able to perform serial 3s, and recall 5/5 words immediately and 4/5 words after a delay.  Id. at 1618-19.  As the ALJ indicated, plaintiff's "average performance on tests measuring attention and concentration" appear inconsistent with Dr. Liotta's overall restrictive determination that plaintiff had a "low" likelihood of sustaining gainful employment.  Id. at 969, 1618-20.

Although "it is well-settled that the performance of basic daily activities does not

necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec.,No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court finds that it was reasonable for the ALJ to grant Dr. Liotta's medical opinion "little weight" due to its inconsistencies with plaintiff's own statements and other medical evidence in the record, as well as the tests performed during his own physical examination.  Thus, the Court finds that the ALJ appropriately granted "little weight" to Dr. Liotta's medical opinion.[4]

## C. Residual Functional Capacity Finding

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v.

---

[4] To the extent that plaintiff contends that the ALJ failed to properly evaluate the medical opinions of other various treating sources, the Court will address this argument within its assessment of the RFC.

Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: [plaintiff] can stand and walk for thirty minutes each at a time before needing to change positions for five minutes; [plaintiff] can sit for one hour before she needs to change positions for five minutes; [plaintiff] can occasionally climb stairs and ramps, but can never climb ladder or scaffolds; [plaintiff] can occasionally balance, stoop, kneel, crouch, or crawl; [plaintiff] can occasionally use her right upper extremity for pushing, pulling, and overhead reaching; [plaintiff] must avoid concentrated exposure to respiratory irritants, temperature extremes, or humidity; [plaintiff] can understand, remember, and carry out simple instructions; [plaintiff] can perform simple tasks; [plaintiff] can make judgments on simple work-related decisions; [plaintiff] can frequently interact with supervisors and coworkers, but can only occasionally interact with the public; and [plaintiff] can occasionally adapt to changes in the work setting.

T. 949.  Sedentary work is defined as:

> [I]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

In making the determination that plaintiff could perform restricted sedentary work, the ALJ first relied on the medical source statement of Dr. Stephen Kaplan.  After reviewing plaintiff's medical file in response to medical interrogatories, Dr. Kaplan opined that plaintiff "should be limited to a sedentary work position with low stress requirements – either

physical or emotional." T. 1304. Because of her low back pain, Dr. Kaplan indicated that plaintiff "should have a sit/stand option for brief periods (5 minutes) or continuing work activity either sitting or standing." Id. He opined that plaintiff could occasionally lift and carry up to ten pounds. Id. at 1305. He also indicated that plaintiff could sit for one hour, stand for thirty minutes, and walk for thirty minutes without interruption, and sit for six hours, stand for one hour, and walk for one hour total in an eight hour workday. Id. at 1306. He noted that plaintiff could occasionally reach overhead, and frequently reach generally, handle, finger, feel, and push/pull. Id. at 1307. She could occasionally operate foot controls with either foot. Id. Dr. Kaplan indicated that plaintiff could occasionally climb stairs and ramps and balance, but could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. Id. at 1308.

The ALJ gave Dr. Kaplan's opinion "great weight," as "he had the opportunity to review [plaintiff']s file when the record was more fully developed, [and] because his findings are generally consistent with the medical evidence [in the record]." T. 968. The ALJ also noted that Dr. Kaplan's hearing testimony established that he had "thoroughly reviewed and considered all the medical evidence available at that time," id. at 986, including that plaintiff's chronic plain syndrome and lower back pain, hand impairments due to de Quervain's tendinitis, and migraine headaches. Id. at 1005-08.

Dr. Kaplan's opinion is consistent with the medical opinion of consultative examiner Dr. Wassef, who, in assessing plaintiff for a orthopedic examination, opined that plaintiff "should not be exposed to extremes in temperature, second hand smoke, perfumes, chemicals, or any type of respiratory irritants." T. 648. In his physical examination, Dr.

Wassef noted that plaintiff was "in no acute distress," had normal gait, could squat fully, and had no difficulty walking on her heels and toes. Id. at 647. He indicated that plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, fingers, lips, knees, and ankles. Id. Dr. Wassef noted that plaintiff had trigger points in her neck, upper back, mid back, lower back, both shoulders, both elbows, both wrists, both hips, and both knees. Id.

The ALJ granted Dr. Wassef's opinion "significant weight" because "his clinical observations support his findings and because his findings are generally consistent with medical evidence available at the time he performed his examination." T. 967. There is no indication, as plaintiff suggests, that the ALJ only credited the portion's of Dr. Wassef's opinion that supported his own conclusions, see Dkt. No. 19 at 34, as the ALJ ultimately assessed greater limitations  than those Dr. Wassef set forth in his opinion.  See T. 967 ("I ultimately conclude that [plaintiff] is subject to a greater degree of limitations than [Dr. Wassef] opined based on the opinion of the medical expert consulted in this matter.").

The ALJ also gave "significant weight" to the consultative psychiatric evaluation of Dr. Hartman, noting that "his clinical observations support his findings and because his findings are consistent with the medical evidence available at that time concerning plaintiff's mental health issues."  T. 967.  A more thorough analysis of Dr. Hartman's opinion is discussed infra.  See discussion III.C.3, at 27-29.

The Court concludes that the ALJ properly weighed the medical evidence in the record in determining plaintiff's RFC, and that the RFC determination is based on substantial evidence.  To the extent that plaintiff argues that the ALJ erred by granting more weight to the medical opinions of the consultative examiners than to her treating

physicians, the Court disagrees.  It is well-settled that "a consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence." Colbert v. Comm'r. of Soc. Sec., __ F. Supp. 3d __, 2018 WL 3042069, at *10 (S.D.N.Y. 2018) (citing inter alia Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence)).  Thus, the ALJ's decision to afford greater weight to Dr. Kaplan, Dr. Wassef, and Dr. Hartman's medical opinions because he found it consistent with the medical treatment evidence is not in error.

### 1. Fibromyalgia

Plaintiff first argues that plaintiff does not have the RFC to perform sedentary work because of her non-exertional limitation of fibromyalgia.  Dkt. No. 19 at 37-38.  However, as the Commissioner notes, fibromyalgia is not per se disabling.  Dkt. No. 23 at 10.  In fact, a "[m]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability[.]" Stephanie Prince v. Astrue, 514 F. App'x 18, 20 (2d Cir. 2013) (quoting Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (internal quotation marks omitted)).  "[F]or purposes of the disability analysis, the mere diagnosis of fibromyalgia is not particularly significant; it is the severity of the fibromyalgia symptoms and the limitations caused thereby that matter most." Maldonado v. Berryhill, No. 16-CV-165 (JLC), 2017 WL 946329, at *22 (S.D.N.Y. Mar. 10, 2017) (quoting Lasitter v. Astrue, No. 12-CV-112 (JMC), 2013 WL 364513, at *9 (D. Vt. Jan. 30, 2013) (internal

quotation marks omitted)).  Although the ALJ here determined that plaintiff's fibromyalgia was a severe impairment, that determination does not end the assessment into whether he was disabled.  See id.

Where a plaintiff alleges fibromyalgia, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment."  SSR 12-2p, 2012 WL 3104869, at *3.  "Such records capture the symptoms of fibromyalgia which can 'wax and wane so that a person may have bad days and good days' or 'vary in severity over time.'" Maldonado, 2017 WL 946329, at *23 (quoting SSR 12-2p, 2012 WL 3104869, at *5-6).

Here, it is clear from the ALJ's decision that he examined the severity of plaintiff's fibromyalgia symptoms over time.  As the Southern District of New York reasoned in Maldonado, the ALJ's written decision demonstrates that he "evaluated all the evidence in the record in order to present a longitudinal picture of her allegations."  Maldonado, 2017 WL 946329, at *23 (citation and internal quotation marks omitted).  In rendering the RFC determination, the ALJ considered plaintiff's treatment notes with P.A. Hinson dating from April 22, 2009 through May 2011 wherein P.A. Hinson evaluated and treated pain symptoms.  See T. 584-92, 679-51.  The ALJ also reviewed the consultative orthopedic examination by Dr. Wassef, wherein he indicated that plaintiff had generally normal findings, and no limitations in performing her activities of daily living.  T. 647.  The ALJ also evaluated the treatment notes of Dr. Bonnabesse dated March 24, 2011 through December 1, 2011, who plaintiff frequently saw to treat her pain symptoms.  The Court notes that there is some indication that Dr. Bonnabesse questioned whether plaintiff

suffered from fibromyalgia.  See T. 871.  The ALJ also reviewed the treatment notes of N.P. Berggren dated December 1, 2011 through June 4, 2013.  Id. at 875-76, 879-80, 1258-59, 1263, 1266-67, 1270-71, 1274-77.  The ALJ also evaluated the treatment notes of Dr. Oommen dated February 19, 2014, id. at 1256-57; Dr. Roa dated May 14, 2014 through August 21, 2014, id. at 1237-41, 1244-49, 1252-53; and N.P. Heywood dated July 1, 2016 through February 15, 2017, id. at 1399-1421, 1568-91.  As such, "[t]he ALJ's findings [ ] rested on the longitudinal picture provided by the medical evidence and treating physicians, and captured the waxing and waning nature of [plaintiff's] fibromyalgia." Maldonado, 2017 WL 946329, at * 23.  Notably, as the Commissioner indicates, plaintiff has failed to offer additional limitations supported by the record that the ALJ should have included in his RFC determination, aside from her conclusory statement that "there is no medical evidence that [plaintiff] has not disabled from her fibromyalgia."  Dkt. No. 19 at 38; Dkt. No. 23 at 11.  Thus, the Court concludes that the ALJ properly evaluated plaintiff's symptoms in determining the impact of her fibromyalgia on her RFC.  See Maldonado, 2017 WL 946329, at * 23 (citing Rivers, 280 F. App'x at 22 ("[F]ibromyalgia is a disease that eludes [objective] measurement, [and] mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.") (internal quotation marks omitted).

### 2. Epigastic Symptoms, Pain, and Side Effects of Medication

A similar analysis applies to plaintiff's argument that the ALJ failed to consider plaintiff's epigastric symptoms, pain, and side effects of medication.  See Dkt. No. 19 at

24

38-40, 41-42. In his decision, the ALJ discusses plaintiff's testimony regarding the alleged side effects of plaintiff's pain medication, including that her pain medication often made her feel drowsy, as well as treatment notes that describe side effects of medications like Savella and Topomox. T. 950, 954-55. The Court notes that plaintiff's treatment records indicate that although plaintiff believed that Savella "gave her a migraine," the records later indicate that plaintiff was "not having any problems" on a lower dosage of the medication, and that, at one point, the medication caused a 30% improvement in her fibromyalgia symptoms — a distinction that the ALJ notes in his decision. T. 586, 588, 590, 954. As to plaintiff's epigastric problems, plaintiff testified at the November 15, 2011 hearing that she experienced nausea, vomiting, and diarrhea "not very often anymore," and indicated that medication helped alleviate her symptoms. Id. at 42-43. When asked how often she experienced nausea or diarrhea, plaintiff responded that she had not had diarrhea "in a few months," and that although she was "a little nauseated" the previous night after she ate, the sensation only lasted for "about 20 minutes." Id. at 43. Moreover, the ALJ detailed plaintiff's complaints of epigastric pain and other symptoms in his decision. See id. at 957-58.

Finally, as to plaintiff's complaints of pain, the Court agrees with the Commissioner that the ALJ's decision "describes in detail [p]laintiff's reports of pain throughout her treatment notes." Dkt. No. 23 at 15; T. 950-66. Insofar as plaintiff suggests that evidence of these symptoms supports a finding of disability, the Court concludes otherwise. "The mere presence of symptoms is insufficient to show disability under the Social Security Act, rather the claimant must show that her symptoms would preclude any substantial gainful

activity." Ewing v. Astrue, No. 5:11-CV-01418, 2013 WL 1213129, at *10 (N.D.N.Y. Mar. 22, 2013) (citing 20 C.F.R. § 404.1529(c)(1); see Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir.1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."); SSR 96-7p, 1996 WL 374186, at *2 ("[A]n individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.")).  In reviewing plaintiff's expansive treatment records and hearing tesimony, the ALJ acknowledged plaintiff's complaints of pain against the medical evidence in the record, and determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [he] conclude[d] that her statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully consistent with the evidence."  T. 953.  The ALJ further concluded that "[t]he medical evidence is not consistent with the severity of symptoms and the degree of limitations that would preclude [plaintiff] from performing any work," and that "clinical findings, diagnostic tests, and the treatment that [plaintiff] has received provide a reasonable basis to conclude that [plaintiff] is capable of performing a reduced range of sedentary work."  Id.  To the extent that evidence in the record plaintiff's pain symptoms is susceptible to more than one interpretation, it is well-settled that the determination of the Commissioner must be upheld, "'even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's].'"
Weather v. Astrue, 32 F. Supp. 3d 363, 368 (N.D.N.Y. 2012) (quoting Rosado v. Sullivan,
805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

### 3. Mental Impairments

Plaintiff also argues that the ALJ erred by not giving proper weight to her mental
health limitations in determining her RFC. See Dkt. No. 19 at 40-41. The Court disagrees.
As noted above, the ALJ concluded that plaintiff's anxiety disorder, bipolar disorder,
learning disorder, major depressive disorder, and personality disorder were severe
impairments. T. 946. In setting forth plaintiff's RFC, the ALJ stated, in its relevant part,
that: "[plaintiff] can understand, remember, and carry out simple instructions; [plaintiff] can
perform simple tasks; [plaintiff] can make judgments on simple work-related decisions;
[plaintiff] can frequently interact with supervisors and coworkers, but can only occasionally
interact with the public; and [plaintiff] can occasionally adapt to changes in the work
setting." T. 949. In making this determination, the ALJ relied on Dr. Hartman's November
11, 2010 consultative psychiatric evaluation. Id. at 967. In that consultative examination,
Dr. Hartman provided a detailed longitudinal history of plaintiff's psychiatric and medical
history. Id. at 640. He noted that plaintiff claimed that she began treatment for depression
at fourteen years old, and was later diagnosed with bipolar disorder. Id. She continued
treatment for three years, and reported no treatment since the age of seventeen. Id. Dr.
Hartman indicated that plaintiff's thought process was "coherent and goal directed with no
evidence of hallucinations, delusions, or paranoia in the evaluation setting." Id. at 642.

Although her attention and concentration appeared to be "mildly impaired," she could count without difficulty, although her calculations and serial 3s were slow.  Id.  Her recent and remote memory skills appeared to be generally intact, and she could recall four out of four objects immediately and three out of four objects after five minutes.  Id.  She performed five digits forward, and four digits backward.  Id.  Dr. Hartman noted that plaintiff's intellectual functioning appeared to be in the "low average range with a lower than average general fund of information."  Id.  Plaintiff's insight and judgment were fair.  Id.

Based on his examination, as well as plaintiff's reported activities of daily living, Dr. Hartman opined that plaintiff "would be able to follow and understand simple directions and instructions."  T. 643.  He indicated that plaintiff had "a fair ability to make appropriate decisions and a fair ability to relate adequately with others."  Id.  He opined that plaintiff had "mild attention and concentration problems," "mild difficulty learning new tasks," and moderate problems maintaining a regular schedule."  Id.  Dr. Hartman noted that plaintiff would "likely [ ] have difficulty performing a variety of tasks given her stated physical problems," and that she had "moderate problems dealing with the normal stressors of life." Id.  Dr. Hartman diagnosed plaintiff with bipolar II disorder, and a learning disorder "by history."  Id.

The ALJ granted Dr. Hartman's opinion "significant weight" because "his clinical observations support his findings and because his findings are consistent with the medical evidence available at that time concerning [plaintiff's] mental health issues, which showed that [plaintiff] had not received any mental health treatment since she was seventeen years old, or about seven years."  Id. at 967.  As the Commissioner notes, Dr. Hartman's opinion

was generally consistent with plaintiff's mental status examination results in the record, which demonstrated that plaintiff had intact memory, concentration, insight, and judgment. See Dkt. No. 23 at 12; T. 580, 584, 586, 588, 591, 595, 691, 700, 1364, 1408,1417, 1437 1568, 1570, 1574.

Plaintiff again contends that Dr. Liotta's opinion "should have been given great weight because he had the opportunity to review her mental health records and was the most current consultative examiner." Dkt. No. 19 at 40. As the Court concluded supra, it was reasonable for the ALJ to grant Dr. Liotta's medical opinion "little weight" due to its inconsistencies with plaintiff's own statements and other medical evidence in the record, as well as the tests performed during his own physical examination. Although Dr. Liotta's psychological consultative examination was more recent, the ALJ found that his "findings were inconsistent with [plaintiff']s own reports of her activities and the medical evidence concerning her mental health issues." T. 969. The ALJ also cited plaintiff's "average performance on tests measuring attention and concentration" as inconsistent with his overall determination. Id. The Court notes that Dr. Liotta's examination results seemingly mirror that of Dr. Hartman's — notably, that although her general fund of information was poor, she was able to do serial 3s, recall five out of five words immediately and four out of five words after a delay, and that her insight was "fair to good," and her judgment was "fair." Id. at 1618-19.

In granting "little weight" to Dr. Liotta's determination, the ALJ also cited plaintiff's testimony that she believed that she did not need mental health treatment for her mental health issues, as well as the fact that plaintiff "went without mental health treatment until

March 2014." T. 39, 969. Moreover, as the ALJ noted, plaintiff's discharge summary from

Clinton County Mental Heath on July 9, 2015 indicates that plaintiff had made

> significant progress toward her goals since admission . . . .
> [S]he reported feeling increasingly confident in her ability to
> manage symptoms of depression and anxiety, feeling that they
> no longer have control over her and her life. [Plaintiff] has
> learned skills to reduce stress and identify triggers to increases
> in mental health symptoms.  She is able to successfully use
> these coping strategies in order to improve functioning and
> reduce distress.

Id. at 1355.[5]

        The ALJ was entitled to rely on Dr. Hartman's opinion in assessing the non-

exertional limitations to be included in plaintiff's RFC and provided sufficient reasons for

discounting the more extensive limitations Dr. Liotta opined.  It is the ALJ's responsibility

to weigh the evidence and resolve material conflicts within the record; the ALJ reasonably

relied on Dr. Hartman's opinion, which indicated mild attention and concentration problems,

mild difficulty learning new tasks, moderate problems maintaining a regular schedule, and

moderate problems dealing with the normal stressors of life in determining that plaintiff

could perform unskilled work.  T. 643[6]; see Bliss v. Colvin, No. 13-CV-1086, 2015 WL

457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all

medical evidence and resolve material conflicts where sufficient evidence provides for

such."); Petell v. Comm'r of Soc. Sec., 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y.,

---

        [5] The summary also notes that plaintiff was discharged due to her failure to appear.  T. 1355.  As
such, it was unclear if plaintiff had sustained these positive changes.  Id.

        [6] As the Commissioner notes, a "moderate limitation" in performing work-related mental activities
does not preclude a plaintiff from performing unskilled work.  See Zabala v. Astrue, 595 F.3d 402, 410 (2d
Cir. 2010) (concluding that moderate limitations do not preclude a finding that the plaintiff can perform
unskilled work); Dkt. No. 23 at 11 n.5.

Mar. 21, 2014) (same).  Thus, the Court concludes that the ALJ properly evaluated plaintiff's mental impairments in determining her RFC.

### D. Credibility Determination

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  Weather, 32 F. Supp. 3d at 381 (citing Tejada, 167 F.3d at 776).

Plaintiff argues that the ALJ erred by failing to set forth "clearing and convincing

evidence to not credit [p]laintiff's testimony regarding her limitations." Dkt. No. 19 at 42. After a review of the evidence, the ALJ stated that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [he] conclude[d] that her statements concerning the intensity, persistence, and limiting effects of her symptoms [were] not fully consistent with the evidence." T. 953. Contrary to plaintiff's argument, the ALJ discussed throughout his decision why he found plaintiff's allegations to be not credible. The ALJ noted that [t]he medical evidence [was] not consistent with the severity of symptoms and the degree of limitations that would preclude [plaintiff] from performing any work." Id. The ALJ also indicated that plaintiff's reported activities were inconsistent with the limits she alleged. Plaintiff reported that she was able to cook, clean, do laundry, shop, and regularly care for her child. Id. at 199-200, 643, 646. She also reported that she goes shopping with her grandmother, can drive, spends time with family and friends, and regularly exercises five to six times a week. Id. at 643, 957, 1406, 1603. The ALJ also indicated that "[t]he fact that [plaintiff] was able to meet someone socially within four months and began a romantic relationship with them and travel to see that individual is not consistent with the significant impairment in social functioning that Dr. Liotta assessed." Id. at 969. The ALJ's reliance, in part, on plaintiff's activities of daily living was not in error. See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Given the fact that the ALJ provided specific reasons supported by substantial evidence to support his adverse credibility finding, this Court sees no reason to depart from the ALJ's findings, which are generally entitled to deference on appeal. See Weather, 32 F. Supp. 3d at 381. For all the above reasons, the credibility determination is supported by substantial evidence, and remand is not warranted on this basis.

### E. Step Five Determination

Finally, plaintiff seem to suggest that the ALJ's Step Five determination failed to take into account plaintiff's "low average range of intelligence" and "poor reading inability." Dkt. No. 19 at 42. Plaintiff also argues that she does not have the RFC to be a tube operator, document preparer, or surveillance system monitor. Id. at 46.

As to plaintiff's first argument, the ALJ found at step five that plaintiff had a limited education as defined in 20 C.F.R. § 404.1564. T. 971. He also determined that plaintiff had a tenth grade education. Id. at 61. The regulations define a limited education as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). A seventh through eleventh grade level of formal education is considered a limited education. See id. Here, the ALJ found that plaintiff's "ability to perform all or substantially all of the requirements of [sedentary] work has been impeded by additional limitations." Id. at 971. To account for these additional limitations, including plaintiff's limited education and other capabilities, the ALJ determined that plaintiff could perform unskilled sedentary work. Id. Unskilled work

is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [L]ittle specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), § 416.968(a).  Thus, the Court finds that the ALJ properly considered plaintiff's educational level and limitations in determining that plaintiff could perform unskilled sedentary work.

As to plaintiff's second argument that she does not have the RFC to be a tube operator, document preparer, or surveillance system monitor, the Court disagrees.  As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding.  See T. 995-96, 971.  Because the ALJ posed a hypothetical based on that RFC, and the ALJ jobs the vocational expert set forth all constitute unskilled sedentary work, the Court finds that the step five determination is supported by substantial evidence.  See id.

## IV. Conclusion

WHEREFORE, for the reasons stated above, it is hereby:

ORDERED, that plaintiff Jennifer D.'s motion for judgment on the pleadings (Dkt. No. 19) is DENIED; and it is further

ORDERED, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 23) is GRANTED; and it is further

ORDERED, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:      August 31, 2018
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge